UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Roseline Pierre Blanc, | File No. 25-cv-2171 (ECT/SGE) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| LVNV Funding LLC, *A Foreign Limited Liability Company*, and Messerli & Kramer, P.A., | |
| Defendants. | |

Roseline Pierre Blanc, pro se.

Derrick N. Weber, Messerli & Kramer, P.A., Plymouth, MN, for Defendants LVNV Funding LLC and Messerli & Kramer, P.A.

---

This case arises from a prior debt-collection case in Hennepin County Conciliation Court. In that case, LVNV Funding LLC, represented by its counsel, Messerli & Kramer, P.A., obtained a judgment in the amount of $1,194.16 against Roseline Pierre Blanc. Ms. Blanc responded by filing this action. Representing herself, Ms. Blanc claims that LVNV and Messerli's filing of, and conduct in, the prior conciliation-court case was unlawful. She asserts claims under the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, the Federal Constitution, the Uniform Commercial Code, and the Gramm-Leach-Bliley Act, and she asserts common law abuse-of-process and negligence claims.

Defendants seek the case's dismissal under Federal Rule of Civil Procedure 12(b)(6). They argue that Ms. Blanc's claims are barred by the *Rooker-Feldman* doctrine

or, alternatively, claim preclusion principles. Failing those contentions, Defendants argue that this case's "sovereign citizen" character justifies dismissal. Defendants' motion will be denied for the most part. The *Rooker-Feldman* doctrine requires dismissal of Ms. Blanc's request to "vacate" the conciliation court's judgment, but nothing else. Though claim preclusion principles may bar Ms. Blanc's claims to some extent, that is not apparent on the face of the Complaint. And this case is not grounded in sovereign-citizen orthodoxy to the degree warranting dismissal on just that basis.

*The Familiar Rule 12(b)(6) Standards*

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Courts must not presume the truth of legal conclusions couched as factual allegations." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Considering "matters outside the pleadings" generally transforms a Rule 12(b)(6) motion into one for summary judgment, Fed. R. Civ. P. 12(d), but not when the relevant

materials are "necessarily embraced" by the pleadings. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Enervations, Inc. v. Minn. Min. & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)). "In general, materials embraced by the complaint include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Id.* (citation modified). Courts "additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Id.* (citation modified); *see Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012). When a complaint is based on, and refers to, a prior court case, records from that prior case may be considered in adjudicating a motion to dismiss. *Fredin v. Miller*, No. 19-cv-3051 (SRN/HB), 2020 WL 3077708, at *5 (D. Minn. June 10, 2020) ("Given that [the] Complaint refers directly to other cases, the Court finds that the filings in those cases are matters embraced by the pleadings, as well as matters of public record."), *aff'd*, 840 F. App'x 61 (8th Cir. 2021) (per curiam); *see also Leonardo v. MSW Cap., LLC*, No. 16-cv-3845 (PAM/FLN), 2017 WL 2062852, at *2 (D. Minn. May 12, 2017) (recognizing that the defendants' exhibits were "a quintessential example of materials that are 'necessarily embraced by the pleadings'" because the complaint "repeatedly references the state-court action").

*The Pro Se Plaintiff "Liberal Construction" Rule*

Because she is pro se, Ms. Blanc's operative Complaint is entitled to liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). "[H]owever

inartfully pleaded," pro se complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson*, 551 U.S. at 94). "[I]f the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004)). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984); *see Sorenson v. Minn. Dep't of Corr.*, No. 12-cv-1336 (ADM/AJB), 2012 WL 3143927, at *2 (D. Minn. Aug. 2, 2012). A pro se complaint must contain sufficient facts to support the claims it advances. *Stone*, 364 F.3d at 914.

*The Complaint's Factual Allegations and Legal Theories*

The following facts are recounted in accordance with the just-described Rule 12(b)(6) standards and pro se plaintiff liberal-construction rule. "In or around late 2022," LVNV and Messerli & Kramer began attempting to collect a $1,119 debt they alleged Ms. Blanc owed to LVNV. Compl. [ECF No. 1] at 3 ¶¶ 9, 10.[1] The "alleged debt [was] originally issued by Credit One Bank, N.A." *Id.* at 3 ¶ 9. Credit One "purportedly sold" the debt "to Sherman Originator III, LLC," and "then transferred [it] to LVNV." *Id.* at 3

---

[1] Page cites are to pagination assigned by the court's CM/ECF system appearing in a document's upper right corner, not to a document's original pagination. It is necessary to include citations to both the Complaint's page and paragraph numbers because the document's paragraphs are not sequential. *See, e.g.*, Compl. at 4–5 (going from paragraph "19" to paragraph "14").

4

¶ 10.  Ms. Blanc disputed the debt.  *See id.* at 3 ¶ 12.  Her primary contention was that LVNV failed to prove it owned the debt.  *See id.* at 3 ¶¶ 10, 11.[2]

On November 12, 2024, LVNV, represented by Messerli, filed suit against Ms. Blanc in Hennepin County Conciliation Court.  Compl. at 3 ¶ 12; ECF No. 13-2.  In its Statement of Claim, LVNV alleged that Ms. Blanc owed $1,119.16 on a credit card account originally issued by Credit One.  ECF No. 13-2 at 2.  LVNV alleged it was the "successor in interest to Credit One."  *Id.*  In addition to the debt amount, LVNV sought to recover its $70 filing fee "plus an e-filing fee of $5.00, for a total of $1,194.16."  *Id.*

Ms. Blanc counterclaimed.  Compl. at 4 ¶ 13; ECF No. 13-3.  She alleged that LVNV lacked proof of the account's creation, of the debt's amount, and of LVNV's

---

[2]   Ms. Blanc may have other reasons for disputing the debt, but they are difficult to discern.  Ms. Blanc alleges:

> Plaintiff timely disputed the alleged debt in writing, including a formal dispute sent to Credit One Bank in 2022 asserting her status as trustee, beneficiary, and claimant, along with a notice terminating any contractual obligations; [sic] and further supplemented by privacy and identity theft disputes submitted to the credit reporting agencies and the CFPB in 2023, all prior to or contemporaneous with Defendant's [sic] collection efforts.. [sic]

Compl. at 3 ¶ 12. Ms. Blanc does not explain why her status as a "trustee, beneficiary, and claimant" might have relieved her of the obligation to pay the debt.  The same is true of Ms. Blanc's allegation regarding a "privacy" dispute.  Ms. Blanc does not describe how her privacy was violated.  She does not identify who violated her privacy.  And she does not indicate why a privacy violation might excuse her from paying the debt.  Ordinarily, I would understand Ms. Blanc's reference to "identity theft" as suggesting the debt was incurred by some third party who misappropriated Ms. Blanc's identity to obtain the funds.  Here, however, this one reference is all we have, and Ms. Blanc does not allege that identity theft (or Defendants' failure to recognize that she was the victim of identity theft) holds any relevance to her claims.

5

ownership of the debt. *See* ECF No. 13-3 at 3 ¶ 2. She claimed that LVNV "ha[d] violated the Fair Debt Collection Practices Act by initiating court proceedings without proper validation of the debt" and by "[f]iling an unsubstantiated claim." *Id.* at 3 ¶ 4. She sought dismissal of LVNV's claim and damages from LVNV. *Id.* at 3 ¶ 5.

Following a remote hearing on April 29, 2025, the conciliation court referee entered judgment awarding LVNV the full amount of its claim, or $1194.16. ECF No. 13-6 at 2. The referee rejected Ms. Blanc's counterclaim. *Id.* Specifically, the referee checked the box on a form order indicating that Ms. Blanc "ha[d] not demonstrated an entitlement to relief" and ordered that she recover nothing. *Id.* The referee stayed the entry of judgment until May 23, 2025, to allow time for an appeal. *Id.* Ms. Blanc did not appeal, and the judgment was docketed on June 10, 2025. *See* ECF No. 13-1 at 2; *see also* ECF No. 13-7 at 2–4.

Ms. Blanc filed the Complaint in this case on May 20, 2025, *see* Compl. at 1, though she did not serve it until August 4, 2025, *see* ECF No. 9-1. Ms. Blanc's Complaint includes seven counts (though two are numbered "V"). (1) She claims Defendants violated numerous subsections of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Compl. at 5 ¶¶ 14–16. (2) She claims Defendants violated numerous subsections of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Compl. at 5–6 ¶¶ 17–19. (3) She claims Defendants committed the common-law tort of abuse of process and perpetrated a fraud on the Hennepin County Conciliation Court. *Id.* at 6 ¶¶ 20–22. (4) She claims Defendants violated the Gram-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq.* Compl. at 6–7 ¶¶ 24–25. (5) Through 42 U.S.C. § 1983, Ms. Blanc claims Defendants

violated her due process rights under the Federal Constitution.  Compl. at 7 ¶¶ 24–25. (6) She claims Defendants were negligent and made negligent misrepresentations.  *Id.* at 7 ¶¶ 26–27.  (7) She claims Defendants violated "UCC § 9-210" because they failed to demonstrate LVNV's ownership of the debt with evidence of "an unbroken chain of title and enforceable legal rights."  Compl. at 7–8 ¶¶ 28–33.

*The Rooker-Feldman Doctrine*

Defendants argue that some of Ms. Blanc's claims should be dismissed under the *Rooker-Feldman* doctrine.  The doctrine is the starting point because it implicates a federal court's subject-matter jurisdiction.

> In the two decisions for which the doctrine is named, *Rooker v. Fidelity Trust Co.*, [263 U.S. 413 (1923)], and *District of Columbia Court of Appeals v. Feldman*, [460 U.S. 462 (1983)], the [Supreme] Court established the narrow proposition that with the exception of habeas corpus proceedings, the inferior federal courts lack subject-matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

*In re Athens/Alpha Gas Corp.*, 715 F.3d 230, 234 (8th Cir. 2013) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  "This conclusion follows from 28 U.S.C. § 1257, which grants to the Supreme Court exclusive jurisdiction over appeals from state-court judgments."  *Id.* at 234; *see Exxon Mobil*, 544 U.S. at 283 ("Federal district courts . . . are empowered to exercise original, not appellate, jurisdiction.").  In *Exxon Mobil*, the Supreme Court noted that inferior federal courts had sometimes applied the *Rooker-Feldman* doctrine too broadly, "overriding Congress'

7

conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738," the Full Faith and Credit Act. *Exxon Mobil*, 544 U.S. at 283. To check the lower federal courts' enthusiasm for the *Rooker-Feldman* doctrine, the Supreme Court made clear that the doctrine applies only to cases filed in federal court by the losing party in state court "complaining of an injury caused by the state-court judgment" that "call[] upon the District Court to overturn an injurious state-court judgment." *Id.* at 291–92. Importantly, the Court also explained that § 1257 does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293. "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* (alterations in original) (quoting *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

In circumstances where a plaintiff alleges fraud, misconduct, or some constitutional violation in prior state court proceedings, the pivotal question is whether the plaintiff seeks relief from the state court judgment or seeks some other relief for the misconduct or violation. *See Hageman v. Barton*, 817 F.3d 611, 614–15 (8th Cir. 2016); *MSK EyEs Ltd. v. Wells Fargo Bank, Nat'l Ass'n*, 546 F.3d 533, 539 (8th Cir. 2008). For example,

> [i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an

8

> allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

*Wells Fargo*, 546 F.3d at 539 (quoting *Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008)). In other words, *Rooker-Feldman* "does not bar jurisdiction over actions alleging independent claims arising from conduct in underlying state proceedings," *Hageman*, 817 F.3d at 614, but rather precludes "claims assert[ing] an injury caused by the state court judgments," such as "claim[s] that the state court judgments themselves are unconstitutional," *McCormick v. Braverman*, 451 F.3d 382, 392 (6th Cir. 2006); *see Kvalvog v. Park Christian Sch.*, 66 F.4th 1147, 1151–52 (8th Cir. 2023) (holding the *Rooker-Feldman* doctrine did not bar claim for relief based on defendants' allegedly illegal actions in prior state court proceedings even though the claim "denie[d] a legal conclusion that a state court has reached").

With one exception, the *Rooker-Feldman* doctrine does not bar jurisdiction over this action. In this case, Ms. Blanc seeks relief from allegedly illegal actions she claims Defendants undertook in bringing and prosecuting the Hennepin County Conciliation Court case. She claims Defendants lacked grounds to file the case. These include, for example, the absence of evidence essential to establishing Ms. Blanc's liability. *See, e.g.*, Compl. at 4 ¶ 15. And Ms. Blanc claims Defendants pursued the case with insufficient evidence and through litigation tactics designed to deprive her of a meaningful opportunity to respond to or defend against the claim. *See, e.g.*, *id.* at 4 ¶¶ 14–16. In Ms. Blanc's view, these actions independently violated the Federal Constitution, federal statutes, and state common law—regardless of how the Hennepin Conciliation Court might have resolved the

9

case. Consistent with this understanding of Ms. Blanc's claims here, the Complaint seeks damages arising, not from the conciliation court's judgment, but from Defendants' conduct in the conciliation-court case.

The one exception is Ms. Blanc's request to have the conciliation court's judgment vacated. This request appears more than once in the Complaint. *See id.* at 6 ¶ 22; *see also id.* at 9 ¶ D. If *Rooker-Feldman* is obvious in any respect, it is that a federal district court lacks judicial power to overturn or vacate a state-court judgment. The Complaint will be dismissed without prejudice for lack of subject-matter jurisdiction to the extent it seeks this remedy.[3]

*Claim Preclusion*

Defendants argue that Ms. Blanc's claims are barred by claim preclusion based on the Hennepin County Conciliation Court judgment. When applying claim preclusion, also known as res judicata, "[t]he law of the forum that rendered the first judgment controls." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Laase v. County of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011)). "In Minnesota, conciliation court

---

[3] In addition to *Rooker-Feldman*, there is another problem with Ms. Blanc's request to vacate the Hennepin County Conciliation Court judgment. As authority for the request, she cites Federal Rule of Civil Procedure 60(b). *See* Compl. at 6 ¶ 22; *see also id.* at 9 ¶ D. Rule 60(b) does not give a federal district court authority to vacate a state-court judgment. *Jones v. Minnesota*, No. 11-cv-2501 (JNE/AJB), 2011 WL 4947647, at *6 (D. Minn. Sep. 28, 2011) ("Rule 60(b) authorizes a civil litigant to file a motion seeking relief from a judgment that has been entered in a *federal civil* case." (emphasis added)), *R. & R. adopted*, 2011 WL 4957369 (D. Minn. Oct. 18, 2011), *order vacated and R. & R. adopted*, 2011 WL 5248086 (D. Minn. Nov. 3, 2011); *Sternberg v. Warneck*, No. 2:23-cv-01466-APG-EJY, 2024 WL 4805021, at *1 (D. Nev. Nov. 14, 2024) (noting that a plaintiff "cannot do an end run around *Rooker-Feldman* by resort to Rule 60(b)"), *aff'd*, No. 24-7206, 2025 WL 1202218 (9th Cir. Apr. 25, 2025).

judgments are also accorded res judicata effect." *Livingston v. ITT Consumer Fin. Corp.*, 795 F. Supp. 921, 924 (D. Minn. 1992) (citing *Mattsen v. Packman,* 358 N.W.2d 48 (Minn. 984)). A later claim is barred under Minnesota law "where '(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; (4) the estopped party had a full and fair opportunity to litigate the matter.'" *St. Paul Fire & Marine Ins. Co. v. Compaq Comput. Corp.*, 539 F.3d 809, 821 (8th Cir. 2008) (quoting *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004)). "Res judicata applies to all claims that *could have been* litigated in the earlier action in addition to those claims that actually were litigated." *Id.* (emphasis added) (citing *Hauschildt*, 686 N.W.2d at 840). In other words, claim preclusion does not depend on the legal theories identified in the earlier action, rather, "[a] claim or cause of action is 'a group of operative facts giving rise to one or more bases for suing.'" *Hauschildt*, 686 N.W.2d at 840 (quoting *Martin ex rel. Hoff v. City of Rochester*, 642 N.W.2d 1, 9 (Minn. 2002)). Claim preclusion is not "rigidly applied." *Johnson v. Consol. Freightways, Inc.*, 420 N.W.2d 608, 613 (Minn. 1988). It is a "flexible" doctrine, and "the focus is on whether its application would work an injustice on the party against whom estoppel is urged." *Id.* at 613–14. Claim preclusion is an affirmative defense, meaning it supports a Rule 12(b)(6) dismissal only if its applicability is apparent on the face of the complaint or from "public records and materials embraced by the complaint." *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012) (quoting *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008)).

Messerli was not a party to the earlier state-court case, and the better answer on this record is that it was not in privity with LVNV for that suit's purposes. For claim preclusion purposes, the concept of privity recognizes that "in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties." *Margo-Kraft Distribs., Inc. v. Minneapolis Gas Co.,* 200 N.W.2d 45, 47 (Minn. 1972) (quoting Restatement (First) of Judgments § 83 cmt. a (A.L.I. 1942)). "'Privies' to a judgment are those who are so connected with the parties in estate or in blood or in law as to be identified with them in interest, and consequently to be affected with them by the litigation." *Rucker v. Schmidt*, 794 N.W.2d 114, 118 (Minn. 2011) (quoting *Hentschel v. Smith*, 153 N.W.2d 199, 206 (Minn. 1967)). "[C]ourts will find privity to exist for 'those who control an action although not parties to it,' 'those whose interests are represented by a party to the action,' and 'successors in interest to those having derivative claims.'" *Id.* (quoting *Margo-Kraft Distribs.*, 200 N.W.2d at 47–48). Additionally, privity may also be present "when a person is otherwise 'so identified in interest with another that he represents the same legal right.'" *Id.* (quoting *McMenomy v. Ryden*, 148 N.W.2d 804, 807 (Minn. 1967)). Ultimately, however, the inquiry "requires a careful examination of the circumstances of each case." *Id.* Under Minnesota law, an attorney-client relationship alone does not establish privity. *Id.*; *Worley v. Engel*, No. 17-cv-1105 (PAM/SER), 2017 WL 4862766, at *3 (D. Minn. Oct. 26, 2017) ("[T]he Minnesota Supreme Court has concluded that the existence of an attorney-client relationship does not, by itself, create privity for the purpose of asserting res judicata."). It is true that an "attorney and client

12

necessarily have a common interest . . . in obtaining a favorable outcome for the client." *Rucker*, 794 N.W.2d at 119. But that common interest, on its own, "is not the kind of estate, blood, or legal interest that would give rise to privity." *Id.* "Something more" is needed. *Id.* Here, it is not apparent from the face of the Complaint that Messerli had any interest in the conciliation-court proceedings beyond obtaining a favorable outcome for LVNV. For these reasons, claim preclusion cannot bar Ms. Blanc's claims against the law firm at this motion-to-dismiss stage.[4]

LVNV does not contend that claim preclusion bars this case entirely. It seeks only the dismissal of Ms. Blanc's FDCPA, abuse-of-process, negligence, and UCC-based claims. ECF No. 14 at 10–12. This cause-of-action-based approach seems somewhat inconsistent with claim preclusion's basic nature—again, "[a] claim or cause of action is 'a group of operative facts giving rise to one or more bases for suing.'" *Hauschildt*, 686 N.W.2d at 840 (quoting *Martin ex rel. Hoff*, 642 N.W.2d at 9). In other words, applying claim preclusion doesn't involve comparing the causes of action a plaintiff asserted in a prior case with the causes of action she asserts in a later case. It involves comparing the

---

[4] As Defendants correctly observed, some cases from this District have found that lawyers are in privity with their clients for claim preclusion's purposes. For two reasons, these cases do not justify reaching that holding here. First, some of the cases reaching this result were decided prior to the Minnesota Supreme Court's decision in *Rucker*. *See, e.g.*, *Seaworth v. Messerli*, No. 09-cv-3437 (RHK/LIB), 2010 WL 3613821 (D. Minn. Sep. 7, 2010), *aff'd*, 414 F. App'x 882 (8th Cir. 2011) (per curiam). Second, though other cases reaching this result were decided after *Rucker*, I understand these cases to have found privity based on fact-specific considerations not present here. *See, e.g.*, *Hasan v. Bank of Am., N.A.*, No. 16-cv-2990 (JRT/SER), 2017 WL 1373327, at *7 (D. Minn. Mar. 22, 2017) (finding "that a mutual legal interest in the foreclosure proceeding outcome is sufficient to establish privity between" the lawyer and client), *R. & R. adopted*, 2017 WL 1373260 (D. Minn. Apr. 13, 2017).

prior and subsequent claims' operative facts. Here, the operative facts that gave rise to LVNV's conciliation-court claim were Ms. Blanc's unpaid debt and LVNV's ownership of the debt. *See* ECF No. 13-2 at 2. The operative facts of Ms. Blanc's Complaint in this case include Defendants' attempts to collect the debt in the state-court case. *See, e.g.*, Compl. at 4 ¶¶ 14–16. Those are not same things. *See Delgado v. Midland Credit Mgmt., Inc.*, No. 23-cv-2128 (ECT/JFD), 2024 WL 1255490, at *11 (D. Minn. Mar. 25, 2024), *aff'd*, 131 F.4th 896 (8th Cir. 2025); *see Fairbairn v. Kodi Acquisitions LLC*, No. 14-cv-1635 (PAM/JJK), 2014 WL 4954698, at *3 (D. Minn. Oct. 2, 2014) ("Claims do not derive from the same factual predicate, however, if the right to assert each claim did not exist at the same time." (citing *Hauschildt*, 686 N.W.2d at 841)). It is true that the operative facts underlying Ms. Blanc's conciliation-court counterclaim concerned LVNV's "proper validation of the debt." ECF No. 13-3 at 3 ¶ 4. It is difficult to conceive how that aspect of the counterclaim will not ultimately preclude at least some of Ms. Blanc's claims here. Regardless, as LVNV seems to acknowledge by not seeking outright dismissal on this ground, there is not complete overlap between the operative facts underlying Ms. Blanc's counterclaim and the operative facts underlying her claims in this case. And it is not possible to identify the extent of the overlap from the face of the Complaint. For these reasons, it is not feasible to determine the extent to which claim preclusion bars the claims against LVNV at this motion-to-dismiss stage.

*The "Sovereign Citizen" Issue*

Defendants identify concerns stemming from the "sovereign citizen" character of papers Ms. Blanc has filed in this case, and they argue that these concerns justify the

14

Complaint's dismissal.  ECF No. 14 at 14–17.  Defendants have a point.  Ms. Blanc has made the sovereign-citizen nature of her beliefs clear in just about every filing in this case.  In her Affidavit to Proceed In Forma Pauperis, for example, Ms. Blanc testified that she had no "meaningful assets or disposable income" to cover the filing fee.  ECF No. 2 ¶ 5.  But Ms. Blanc later clarified that "lawful money as prescribed by the Constitution—gold and silver—are not reasonably obtainable to me for use as tender of payment[] nor are they available or commonly used as a practical form of payment to satisfy the restricting demands conditionally commanded by employees and contractors of this court."  ECF No. 3 at 1.  This statement reflects standard sovereign-citizen orthodoxy.  *See Baalim v. United States*, No. 4:19-cv-02671-HEA, 2020 WL 674004, at *2 (E.D. Mo. Feb. 11, 2020).  And Defendants are correct that federal courts often dismiss claims "based solely on sovereign citizen ideology" because they are "inherently frivolous and . . . a waste of judicial resources."  *Hopper v. Addams*, No. 2:24-cv-02129-TLB, 2024 WL 4730595, at *2 (W.D. Ark. Oct. 21, 2024), *R. & R. adopted*, 2024 WL 4728418 (W.D. Ark. Nov. 8, 2024), *appeal dismissed*, No. 24-3405, 2025 WL 1525407 (8th Cir. Feb. 20, 2025).  This case seems different.  Here, though Ms. Blanc's filings reflect sovereign-citizen views, the Complaint does not appear to be derived primarily from those views.  The Complaint will not be dismissed on this ground.[5]  Defendants do not otherwise argue that the Complaint, or any part of it, should be dismissed on the merits.

---

[5] Of course, Federal Rule of Civil Procedure 11 governs Ms. Blanc's litigation conduct just as it governs any other litigant, represented or not.  *See Mills v. City of St. Louis*, No. 4:25-cv-1219-MTS, 2025 WL 3470293, at *2 n.3 (E.D. Mo. Dec. 3, 2025).

**ORDER**

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendants' Motion to Dismiss [ECF No. 11] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. To the extent the Complaint seeks to have the Hennepin County Conciliation Court's judgment vacated, Defendants' motion is **GRANTED,** and the Complaint is dismissed without prejudice for lack of subject-matter jurisdiction.

2. In all other respects, Defendants' motion is **DENIED.**

Dated: January 5, 2026                              s/ Eric C. Tostrud
                                                    Eric C. Tostrud
                                                    United States District Court